NORTHWESTERN MUT. LIFE INS. CO. v. WHITESELLE. (No. 1634.)*

(Court of Civil Appeals of Texas. Texarkana. June 8, 1916. Rehearing Denied June 29, 1916.)

1. INSURANCE ☞123—INSURABLE INTEREST—EFFECT OF DIVORCE.

A wife, named as beneficiary in a life policy to her husband, on being divorced, ceased to have any interest as beneficiary in the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 168–171; Dec. Dig. ☞123.]

2. HUSBAND AND WIFE ☞272(1)—COMMUNITY FUNDS—EFFECT OF DIVORCE.

After divorce, the wife is not entitled to recover of an insurer because community funds were used in paying premiums on a policy on his life.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1003; Dec. Dig. ☞272(1).]

3. HUSBAND AND WIFE ☞272(1)—COMMUNITY FUNDS—EFFECT OF DIVORCE.

A judgment of divorce, adjudging that all personal property of whatsoever kind and character mentioned in the pleadings belong to the community estate, even if construed as including a policy on the husband's life in favor of the wife, does not give her any interest in the policy after the divorce judgment goes into effect.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 1003; Dec. Dig. ☞272(1).]

Error from District Court, Navarro County; H..B. Daviss, Judge.

Action by J. E. Whiteselle, executor, against the Northwestern Mutual Life Insurance Company. Judgment for plaintiff, and defendant brings error. Reversed and rendered.

December 29, 1891, plaintiff in error issued to J. O. Shook a policy on his life for $5,000, payable at his death to his wife, Carrie B. Shook, if she survived him, and to his executors, administrators, or assigns if she did not. By a decree rendered December 8, 1908, and on appeal affirmed February 26, 1910, Carrie B. Shook was granted a divorce. January 1, 1912, plaintiff in error, on the security of the policy it had issued, loaned $1,116 to J. O. Shook, and January 3, 1912, at his request and without the knowledge and consent of Carrie B. Shook, so changed the policy as to make it payable at his death to his executors, administrators, or assigns, instead of to Carrie B. Shook, without reference to whether she survived him or not. This suit was commenced by Carrie B. Shook and was prosecuted by her until she died. It has since been prosecuted by defendant in error as her executor. In her petition Mrs. Shook alleged that the premiums on the policy were paid with funds belonging to the community estate between herself and her divorced husband, J. O. Shook, and that by the judgment in the divorce suit it was determined that she was the owner of an undivided one-half of the policy. She further alleged that the plaintiff in error, before it made the loan to J. O. Shook and before it so changed the policy as to make it payable to his executors, etc., instead of to her, knew the premiums thereon had been paid with community funds, and knew that the court had determined by its judgment in the divorce suit that she was the owner of one-half of the policy, and promised and agreed it would not, without her consent, make any change in the policy or any settlement involving it with J. O. Shook. She further alleged that plaintiff in error, disregarding its promise, conspired with J. O. Shook, whom it knew, she alleged, to be insolvent, to deprive her of her rights with reference to the policy, and without her knowledge and consent loaned him the $1,116 and changed the policy as stated, and so converted her interests in the policy. She prayed for judgment against plaintiff in error for $2,500, one-half the value of the policy, or, in the alternative, for a sum equal to one-half the sum of the premiums paid on the policy to February 26, 1910, or for a sum equal to one-half the paid-up value of the policy at the date of the alleged conversion thereof, interest on the sum she was found to be entitled to, and statutory damages and attorney's fees. In its answer plaintiff in error admitted that it made the loan to J. O. Shook and changed the policy as charged; denied that it thereby was guilty of conversion; denied knowledge of the fact that the premiums on the policy were paid with community funds of the marriage, as alleged by Mrs. Shook; denied that she owned an interest in the policy, or that the court by the decree in the divorce suit had so determined; and alleged that if she owned an interest in the policy, it did not exceed one-half of the value thereof, to wit, $1,072.20, at the date the divorce was granted, to wit, December 8, 1908. The trial court was of opinion that the effect of the judgment in the divorce suit was to determine that the policy was property belonging to the community estate, and therefore "was owned jointly" by J. O. Shook and Carrie B. Shook. As in his opinion this was decisive of the rights of the parties, he instructed the jury to find in defendant in error's favor, "for one-half the accumulated value of said policy on February 26, 1910, to wit, $618.70, and for interest thereon at the rate of 6 per cent. from January 3, 1912, to this date, to wit, $125.15." On a verdict returned as instructed, judgment was rendered in favor of defendant in error against plaintiff in error for the sum of $743.85.

Locke & Locke, of Dallas, for plaintiff in error. Richard Mays, of Corsicana, for defendant in error.

WILLSON, C. J. (after stating the facts as above). [1] In Cheeves v. Anders, 87 Tex. 287, 28 S. W. 274, 47 Am. St. Rep. 107, it was held to be—

"against the public policy of this state to allow any one who has no insurable interest to be the owner of a policy of insurance upon the life of a human being."

In conformity to this principle it was held in Hatch v. Hatch, 35 Tex. Civ. App. 373, 80 S. W. 411, that:

"A wife's interest in a policy on her husband's life ceases upon obtaining a decree of divorce."

These rulings make it clear that Carrie B. Shook, when she was divorced from J. O. Shook, ceased as the beneficiary named therein to have an interest in the policy in question here.

[2] In Rowlett v. Mitchell, 52 Tex. Civ. App. 589, 114 S. W. 845, it was held that, in the absence, as was the case here, of fraud on the part of the husband, the wife cannot follow and recover community funds expended by him in premiums on an insurance policy on his life for the benefit of other persons. It is plain, therefore, that Carrie B. Shook was not entitled to recover of plaintiff in error because community funds were used by J. O. Shook before she was divorced from him in paying premiums due on the policy.

[3] As Carrie B. Shook, when she was divorced from J. O. Shook, ceased to have an interest in the policy as the beneficiary named therein, and as she had no right to follow and recover community funds of the marriage used in paying premiums on the policy, it would seem to follow that the recovery had by her executor is wrong. He insists, however, that it was determined by the judgment in the divorce suit that the policy was community property, and that she owned an undivided one-half interest in it. The policy was not specifically mentioned in that judgment. Notwithstanding the holding approved by the Supreme Court in Martin v. McAllister, 94 Tex. 567, 63 S. W. 624, 56 L. R. A. 585, that:

"A policy of insurance is not a piece of property; it is the evidence of a contract, the contract being that a certain sum of money will be paid, upon the happening of a certain event, to a particular person named in the policy, or who may be the legal holder thereof"

—it might be conceded that the language in the judgment, adjudging that "all personal property, of whatsoever kind and character," mentioned in the pleadings of the parties, belonged to the community estate between Carrie B. Shook and J. O. Shook, included the policy in question, yet it would not follow that Carrie B. Shook, after she was divorced, owned an undivided one-half or any interest whatever in the policy. Had the policy been taken into account by the commissioners appointed to make the partition between the parties, and it was not, and had the court by his judgment on the report of the commissioners undertaken to vest in Carrie B. Shook title to an interest in the policy, and he did not, she would have ceased to own such interest when the decree, divorcing her from J. O. Shook, became effective.

It would be as plainly violative of the public policy of the state to recognize a divorced wife who has ceased to have an insurable interest in her former husband's life, as the owner of an interest in a policy on his life by force of a judgment, as it would be to recognize her ownership of such an interest by force of a transfer thereof to her from him. That she could not be the owner by a transfer was specifically determined in Hatch v. Hatch, cited above.

The judgment will be reversed, and judgment will be here rendered in favor of plaintiff in error.