## SHOEMAKER v. AMERICAN NAT. INS. CO. et al.
### No. 1322—5836.

Commission of Appeals of Texas, Section B.
April 28, 1932.

Simpson, Collins & Moore and Leo Brewster, all of Fort Worth, for plaintiff in error.

C. H. Milliken and Lee, Lomax & Wren, all of Fort Worth, for defendants in error.

SHORT, P. J.

While this suit was instituted by the defendant in error American National Insurance Company, impleading the plaintiff in error, Hardy Shoemaker, and E. L. Harrington, independent executor of the last will of Mrs. Caroline A. Shoemaker, upon the trial it developed that the insurance company had in its possession a sum of money, the amount of which is not in dispute, which the insurance company was ready to pay to the rightful owner, but which was claimed both by the plaintiff in error, Hardy Shoemaker, and said executor. There is no statement of facts nor findings of fact by the trial court, who tried the case without the intervention of a jury, but the material facts are not in dispute.

On December 26, 1908, the defendant in error, insurance company, issued to the plaintiff in error, Hardy Shoemaker, a life insurance policy in which the wife, Caroline A. Shoemaker, was named as beneficiary. This policy provided that, if the insured was alive at the end of twenty years from the date of the contract, and if the payments of the premiums were continued until that time, the insured should have an option of one of the following accumulated benefits: (1) A participating paid-up policy in the sum of $2,000, $130 cash, and the policy's share of the accumulated profits then apportioned; or (2) a cash surrender value of $1,262, and the policy's share of the accumulated profits then apportioned, in cash. The plaintiff in error lived, and the premiums were paid for the entire time as provided in the policy. On June 25, 1927, the plaintiff in error executed an assignment of the policy to his wife, Caroline A. Shoemaker.

On July 6, 1928, the plaintiff in error and his wife, in contemplation of the granting of a divorce, the divorce proceedings being then pending, entered into a property settlement contract, by the terms of which the plaintiff in error received $1,000 in cash, and his wife obligated herself to pay certain community debts amounting to $2,045, in consideration of which the wife became vested with the exclusive property rights to all other community property owned by the parties. This instrument referred to the insurance policy in the following language: "One certain insurance policy in the sum of $2,000 in the American National Insurance Company which said policy is in force and the defendant, Hardy Shoemaker, agrees that the beneficiary shall remain as Caroline A. Shoemaker, and that he will not change the same as to the beneficiary, and the proceeds thereof are to be paid to her." The decree of divorce was entered on the same day the settlement was made, and the provisions of the settlement were carried out, except as to the subject-matter of this suit; that is to say, the husband received $1,000 in cash, and the wife received the remaining property, except the proceeds of the insurance policy, and paid to the proper respective parties the $2,045.

The judgment divorcing the parties did not adjudicate any of the property rights. Caroline A. Shoemaker died on the 14th day of November, 1928, leaving a will in which the defendant in error Harrington was appointed independent executor. It was admitted that the insurance company was bound to deliver to the executor, or to the husband, one of the accumulated benefits provided for in the policy. The trial court entered a judgment in favor of the independent executor for the sum of $1,520, less the sum of $150, allowed the insurance company as attorney's fees. It denied the husband any relief on his cross-action, and adjudged all costs, including attorney's fees, against him. The defendant in error prosecuted his appeal to the Court of

Civil Appeals at Fort Worth within the proper time, and that court, after having considered the record, affirmed the judgment of the district court. Shoemaker v. Harrington, 30 S.W.(2d) 539.

█ The application for the writ of error in this case was granted in view of previous opinions in certain cases, to wit: Price v. Supreme Lodge, Knights of Honor, 68 Tex. 361, 4 S. W. 633; Schonfield v. Turner, 75 Tex. 324, 12 S. W. 626, 7 L. R. A. 189; Cheeves v. Anders, 87 Tex. 287, 28 S. W. 274, 47 Am. St. Rep. 107; Hatch v. Hatch, 35 Tex. Civ. App. 373, 80 S. W. 411; Northwestern Mut. Life Insurance Company v. Whiteselle (Tex. Civ. App.) 188 S. W. 22; Id. (Tex. Com. App.) 221 S. W. 575. The recent case of Wilke v. Finn et al. (Tex. Com. App.) 39 S.W.(2d) 836, discusses kindred questions, and lays down substantially the same rules of law applicable to the facts of the respective cases as do the cases last above mentioned, and especially is the principle reannounced in the last-named case, that the public policy of this state forbids allowing one to own an insurance policy on the life of another in whom he has no insurable interest. The plaintiff in error contends that the opinion of the Court of Civil Appeals in this case conflicts with the opinions in the cases first above cited and logically as well as with the opinion in Wilke v. Finn, supra, though that case is not mentioned. As we understand the opinion of the Court of Civil Appeals, it recognizes the existence of the public policy above mentioned, and agrees that, if the facts in the case at bar made applicable the principles of law announced in those cases, it would have followed them.

█ While there are many assignments of error presented in the application, each of them presents substantially but one question stated in this language, quoted in the opinion of the Court of Civil Appeals: "There is really only one question in this case: Could Caroline A. Shoemaker, after her divorce from the appellant, assert any interest in the policy, either as beneficiary or as assignee by virtue of the assignment of June 25, 1927, and the property settlement contract of July 6, 1928?" After mentioning the authorities upon which the plaintiff in error rests his right to the funds involved, and after declining to review these authorities separately, the Court of Civil Appeals says: "We think it sufficient to say that the conclusion to be gathered therefrom is, that a divorced wife has no insurable interest in the life of her husband, and hence is not entitled to the benefits of a policy of insurance covering by his life either by inheritance or by assignment." This language clearly indicates that, in rendering its judgment, the Court of Civil Appeals recognized the principles of law enunciated in the authorities mentioned. The facts of this case are undisputed, and, after having carefully considered the opinion of the

Court of Civil Appeals, we think that court reached a correct conclusion upon the facts, and that it clearly stated the law applicable thereto to the effect that the cash surrender value of a policy of insurance, wherein the company agrees to pay a fixed sum of money on a certain date, provided the conditions of the policy contract are performed by the insured, becomes, after the performance of the conditions by the insured, a chose in action, or a debt against the insurance company, and the insured may assign it for a valuable consideration, and pass title thereto, and confer upon the assignee the right to collect the debt at its maturity, although such assignee has no insurable interest at the time the debt matures. It appears without contradiction that at the time the property settlement was made, and apparently executed by the parties, Caroline A. Shoemaker did have an insurable interest in the life of Hardy Shoemaker, and therefore the contract was a valid one at the time it was made and executed.

██ We must assume, in harmony with the judgment rendered by the district court, that the trial judge found as a fact that on June 25, 1927, when the husband executed an assignment of the insurance policy to his wife, in the language which is copied in the opinion of the Court of Civil Appeals, that the husband had elected at that time to demand of the insurance company the cash surrender value of the policy when it should mature, and the policy's share of the accumulated profits then apportioned in cash, and had intended to embrace in his assignment to his wife this right of election. And we also must assume that she, or her legal representative, had in due time exercised this right of election. Especially is this true, for the reason that the insurance company has recognized in this case the right of the owner of the fund due by virtue of the election, to receive it. Moreover, we must assume that the trial judge found as a fact in harmony with the judgment rendered that, when the property settlement contract was made and executed between the husband and wife, each and both of them contemplated that the insurance company would be due to pay to the owner thereof, the cash surrender value of the policy and the policy's share of the accumulated profits then apportioned. We must also assume that the parties to this property settlement had, in contemplation of the granting of a divorce, acted in good faith with each other, and each intended to carry out each and all of the terms of said settlement as expressed in the instrument evidencing it, and that the expressions used in stating the contract were intended to refer to a valid and legally enforceable one. In other words, we must assume that the parties did not intend to act in bad faith with each other, and did not intend to enter into a contract which the law

in any wise forbade, but rather that they intended to enter into a legal contract. It is a familiar principle of the law that, where an instrument of writing is susceptible of two constructions, one of which would render it void, and the other valid, it will be presumed that the parties intended to place the construction upon their act, which would render it a valid one. Under the public policy of this state, as expressed in the decisions of the appellate courts, and in view of the fact that the parties contemplated, when they made the contract, that an event would happen in the immediate future, which would materially change their relationship to each, and under one construction of the contract render void a material portion of it, after the happening of such event, the courts will apply the principle of law heretofore stated, and will not give to the contract of the parties that construction which will render illegal and void any material portion thereof. If the parties had not made the election, and if in fact it was contemplated by them that the wife should have the right to demand and receive from the insurance company a participating paid-up policy in the sum of $2,000 on the life of her former husband, and also $130 in cash, and the policy's share of the accumulated profits then apportioned, and had then elected to decline to demand and receive from said insurance company in full satisfaction of the original policy its cash surrender value, and its share of the accumulated profits then apportioned, so much of said contract as related to said insurance policy would be in violation of the public policy of the state and illegal. Upon the other hand, if the language used in said property settlement contract, made and executed as heretofore stated, related only to the cash surrender value of the policy and its share of the accumulated profits then apportioned, this contract would not be in conflict with said public policy of the state. This public policy is founded upon the idea that no person shall be permitted to be interested in the early death of another, who is not related to him in such a way as to give him an insurable interest in the life of the insured, since the state, which is interested in prolonging the lives of its citizens, will not countenance a situation wherein one not having an insurable interest in the life of another, might be tempted to bring about the death of the insured. However, in giving the construction to the property settlement contract which we have concluded that parties intended to give, Caroline A. Shoemaker was not interested in terminating the life of Hardy Shoemaker, but on the contrary was interested in having his life prolonged, at least until the date when she would have the right to demand, in pursuance of the election heretofore made, the payment by the insurance company of the cash surrender value of the policy, and its accumulated profits, after

which she would receive no benefits whatever arising out of the death of Hardy Shoemaker, and therefore could have no interest in procuring his death. From the situation, it clearly appears that the reason of the rule is absent from this case, and could not be applied. In truth and in fact, Caroline A. Shoemaker was interested in prolonging the life of Hardy Shoemaker and not in terminating it. So we think the conclusion reached by the Court of Civil Appeals is a correct one based upon the proposition heretofore stated. These propositions are somewhat elaborated by the Court of Civil Appeals in its opinion rendered on the motion for rehearing, wherein, in speaking of the assignment of the policy in question made by the husband to his wife on June 25, 1927, the Court of Civil Appeals used this language: "It is clear that at this time appellant's wife had an insurable interest in the policy, and the record suggests that the assignment was made to secure funds advanced by the wife to which she had right of control, and we know of no reason why the assignment did not vest in the wife a right to the benefits of the policy. The record discloses that this condition of affairs continued until the decree of divorce. The assignment executed on that day, it is fair to assume, was executed prior to the decree, at a time when the wife's insurable interest existed. At that time too, as we think the record shows, all premiums for the 20-year period had been paid, and, as it seems to us, the wife became vested with the right to the then existing obligations that were enforceable to have the surrender value paid to her, and we do not think that the mere fact that by the divorce her insurable interest terminated ought to be given the effect of divesting a right fixed in the wife prior to the decree. It is true that a divorce would prevent any right on the part of the wife to enforce other provisions of the policy, but not, as we think, destroy a right already vested in her."

We think the judgments of said courts ought to be sustained upon the ground we have discussed. Hawley v. Ætna Life Insurance Company, 291 Ill. 28, 125 N. E. 707. Even though it should be admitted that under the facts and the public policy rule of this state the insurance policy was not the subject of a valid assignment, yet this fact does not prevent a debt matured under it from being assignable. Here the cash surrender value and the profits accruing were the subject of this contract, and represented a debt which matured under it, and this debt we hold to have been assignable. Article 569, R. S. 1925; Dittman v. Model Baking Company (Tex. Com. App.) 271 S. W. 75; 5 C. J. p. 864; § 31.

But the Court of Civil Appeals affirmed the judgment of the trial court for another reason; that is to say, for the reason that

plaintiff in error, having accepted and retained substantial benefits under the contract embraced in the assignment in question, and having made no offer to restore them, is estopped to dispute its validity.

The Court of Civil Appeals, having correctly held that Mrs. Caroline A. Shoemaker became the exclusive and absolute owner by a written assignment of a certain fund which the parties contemplated would be payable upon the happening of a certain event, and the record showing that such event in fact thereafter happened, was, in our opinion, in error in affirming the judgment of the trial court upon the theory that the plaintiff in error was estopped from asserting the invalidity of the claim of Mrs. Caroline A. Shoemaker as a beneficiary under the policy of insurance. Having correctly held that Mrs. Shoemaker had become the assignee of said fund, and that she had no right as a beneficiary under the policy of insurance, the principles of estoppel are not applicable, and we therefore disapprove so much of said opinion as affirms the judgment of the district court upon the ground of estoppel.

We recommend that the judgment of the Court of Civil Appeals affirming that of the district court be affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.