WABASH RAILWAY COMPANY ET AL. *v.* BARCLAY ET AL.

AUSTIN *v.* SAME.

Nos. 37 and 38. Argued December 2, 1929. Decided January 6, 1930.

*Mr. Charles E. Hughes,* with whom *Messrs. Winslow S. Pierce, F. C. Nicodemus, Jr., Gerald V. Hollins, George R. Leslie, Earle Krapp, Winthrop Taylor, Myron S. Hall, H. W. Cohu, La Motte Cohu, Arnold L. Davis,* and *William Fraser Dickson* were on the brief, for petitioners.

*Mr. Joseph S. Clark,* with whom *Messrs. William R. Begg* and *Ellis Ames Ballard* were on the brief, for respondents.

200

Mr. Justice Holmes delivered the opinion of the Court.

This is a bill by holders of first preferred stock (called Class A) of the Wabash Railway Company, to have it declared that holders of such stock are entitled to receive preferential dividends up to five per cent. for each fiscal year from 1915 to 1926 inclusive to the extent that such dividends were earned in such fiscal years but were unpaid, before any dividends are paid upon other stock; and that the Company may be enjoined from paying dividends upon preferred stock B or common stock unless it shall first have paid such preferential dividends of five per cent. to the extent that the Company has had net earnings available for the payment and that such dividends remain unpaid. The case was heard upon bill and answer. The bill was dismissed by the District Court but the decree

was reversed by the Circuit Court of Appeals, one of the Judges dissenting, 30 F. (2d) 260, and a writ of certiorari was granted by this Court. 279 U. S. 828.

The railway company was organized in 1915 under the laws of Indiana with three classes of capital stock: shares of the par value of $100, of Five Per Cent. Profit Sharing Preferred Stock A; shares of the same par value of Five Per Cent. Convertible Preferred Stock B; and shares of the same par value of Common Stock. At the date of the bill there were 693,330.50 shares of A, 24,211.42 B and 666,977.75 common. From 1915 to 1926 there were net earnings in most of the years but for a number of years no dividend, or less than five per cent., was paid on Class A, while $16,000,000 net earnings that could have been used for the payment were expended upon improvements and additions to the property and equipment of the road. It is not denied that the latter expenditures were proper and were made in good faith, or that the money could not have been applied to dividends consistently with the duties of the Road. The Company now is more prosperous and proposes to pay dividends not only upon A but also on B and the common stock, but the plaintiffs say that it is not entitled to do so until it has paid to them unpaid preferential dividends for prior fiscal years in which it had net earnings that might have been applied to them but were not.

The obligations assumed by the Company appear in its instrument of incorporation and in the certificates of Preferred Stock A in substantially the same words: " The holders of the Five Per Cent. Profit Sharing Preferred Stock A of the Company shall be entitled to receive preferential dividends in each fiscal year up to the amount of five per cent. before any dividends shall be paid upon any other stock of the Company, but such preferential dividends shall be non-cumulative." In the event of a liquidation the holders " shall be entitled to be paid in full out

of the assets of the Company the par amount of their stock and all dividends thereon declared and unpaid before any amount shall be paid out of said assets to the holders of any other stock of the Company." By the plain meaning of the words the holders " are not entitled, of right, to dividends, payable out of the net profits accruing in any particular year, unless the directors of the Company formally declare, or ought to declare, a dividend payable out of such profits "; in the first instance at least a matter for the directors to determine. *New York, Lake Erie & Western R. Co.* v. *Nickals*, 119 U. S. 296, 307.

We believe that it has been the common understanding of lawyers and business men that in the case of non-cumulative stock entitled only to a dividend if declared out of annual profits, if those profits are justifiably applied by the directors to capital improvements and no dividend is declared within the year, the claim for that year is gone and cannot be asserted at a later date. But recently doubts have been raised that seem to have affected the minds of the majority below. We suppose the ground for the doubts is the probability that the directors will be tempted to abuse their power, in the usual case of a corporation controlled by the holders of the common stock. Their interest would lead them to apply earnings to improvement of the capital rather than to make avoidable payments of dividends which they do not share. But whether the remedies available in case of such a breach of duty are adequate or not, and apart from the fact that the control of the Wabash seems to have been in Class A, the class to which the plaintiffs belong, the law, as remarked by the dissenting Judge below, " has long advised them that their rights depend upon the judgment of men subject to just that possible bias."

When a man buys stock instead of bonds he takes a greater risk in the business. No one suggests that he has a right to dividends if there are no net earnings. But the

investment presupposes that the business is to go on, and therefore even if there are net earnings, the holder of stock, preferred as well as common, is entitled to have a dividend declared only out of such part of them as can be applied to dividends consistently with a wise administration of a going concern. When, as was the case here, the dividends in each fiscal year were declared to be noncumulative and no net income could be so applied within the fiscal year referred to in the certificate, the right for that year was gone. If the right is extended further upon some conception of policy, it is enlarged beyond the meaning of the contract and the common and reasonable understanding of men.

*Decree reversed.*