## FAIN v. FAIN.

### No. 13414.

Court of Civil Appeals of Texas. Fort Worth.

April 3, 1936.

Rehearing Denied May 8, 1936.

W. L. Bass, of Wichita Falls, and Thompson, Knight, Baker & Harris, of Dallas, for plaintiff in error.

Bullington, Humphrey & King and M. E. McCullough, all of Wichita Falls, for defendant in error.

DUNKLIN, Chief Justice.

Katherine Fain sued her husband, Ernest R. Fain, for divorce and for settlement of property rights as between the parties. The grounds alleged for divorce were that the defendant had been guilty of excesses and cruel treatment toward her of such a nature as to render their living together insupportable.

The defendant filed a cross-action for divorce, making a like charge against the plaintiff. On trial a divorce was granted on plaintiff's petition, and at the same time a judgment was rendered settling the property rights between the parties.

No appeal has been prosecuted by defendant from the decree of divorce, but plaintiff has appealed from the decree with respect to the property rights of the spouses.

The record shows that the parties were married on October 16, 1927, in the city of New York, and that they lived together in Wichita Falls from the date of their marriage until October 8, 1934. At the time of their marriage plaintiff was 22 years of age and the defendant about 15 years her senior. No child was born of their marriage.

The case was tried July 13, 1935, before the court without a jury, and the judgment recites findings that certain properties therein listed belonged to the community estate and awarded each of the parties an undivided half interest therein; also a list of the assets belonging to the separate estate of defendant, Ernest R. Fain, title to which was awarded to him.

There were twelve different items of community property, all of which the court valued at $108,129.23. The court found that the community assets were incapable of partition, and, in order to obtain a fair and equitable division, it is necessary that same be sold and the proceeds divided between the parties. G. D. Anderson, a citizen of Wichita county, was appointed by the court as special commissioner to sell all the community property after advertising the same, in accordance with the statutory requirements for the sale of real estate under execution, and report the same to the court for confirmation.

Included in the list of community assets was the homestead and furnishings, located in Wichita Falls, valued at $35,000, and other real estate and personal property. Following are items 10, 11, and 12 of that list:

(10) "Advances to Fain Bros. & Johnson, a co-partnership composed of E. R. Fain, L. D. Fain, and W. B. Johnson, by Fain Brothers, one half thereof being community assets of plaintiff and defendant, which community interest is contingent upon Fain Bros. and Johnson being solvent and repaying to Fain Brothers such debt, value $20,563.73."

(11) "A one-fourth (1/4) undivided interest in and to the co-partnership of Fain Bros. & Johnson, being a co-partnership composed of E. R. Fain, L. D. Fain, and W. B. Johnson, subject to all debts of such partnership, including the debt of such partnership to Fain Brothers. Estimated value, none."

(12) "Indebtedness due by the separate estate of E. R. Fain (defendant) to the community estate, $31,820.50."

"Item No. 12 in the sum of $31,820.50, which is an indebtedness due by the separate estate of E. R. Fain to the community estate, shall not be sold by the special commissioner and shall be allocated and charged in the partition to E. R. Fain. Further, in case the parties hereto before sale by the special commissioner shall agree as to any property that same shall be allocated and charged to and become the property of either party, the parties to this decree may by agreements and conveyances in writing vest title as so stipulated, whereupon such items shall not be sold by the special commissioner.

"Plaintiff and defendant, respectively, are entitled and are hereby adjudged, to be the owners in equal portions of aforesaid community property and the proceeds thereof, and at the division aforesaid, whether through allotment made by the court or through allotment made by agreement of the parties, or through allotment of proceeds of sales made by the special commissioner, they shall each receive their said equal portions of said property."

There were thirteen items decreed to the defendant, Ernest R. Fain, as belonging to his separate estate, but the court did not find the values thereof. They consisted, chiefly, of interests in real estate and shares of stock in corporations. Item 1 reads as follows: "Cash surrender value of life insurance policies."

The evidence shows that one of those policies was taken out by the defendant before his marriage and the other seven after his marriage.

Item 12 in the list reads: "38,888.89 shares of the corporate stock of the Fain-McGaha Oil Corporation, with all increased value thereof, if any."

In argument submitted by appellant this is said:

"The original decree affirmatively discloses that the court below determined only what items of property and credits, strictly speaking, were community and what items were separate, and that when the court below determined such facts, it decreed strictly and simply in accordance with such

facts as it would have done in an ordinary partition suit.

"It does not appear that the court correctly took into account the respective situations of the parties, nor that the court exercised that discretion contemplated in article 4638 of our Revised Statutes, by which statutes the court was directed to 'order a division of the estate of the parties in such a way as the court shall deem just and right, having due regard to the rights of each party.'

"Such strictly legalistic view of the facts and of the respective rights of the parties, ignoring Article 4638, was arbitrary and hence erroneous."

The evidence shows that the plaintiff, Mrs. Fain, has no other property than her half interest in the community estate awarded by the judgment, and it is insisted that, in view of her necessities, the court should have awarded her the homestead, or else given her a life estate therein, as would have been authorized under the provisions of article 4638, Rev.Civ.Statutes, and such decisions as Hedtke v. Hedtke, 112 Tex. 404, 248 S.W. 21.

The evidence shows further that the cash surrender value of the life insurance policies now owned by the defendant aggregated $4,771.50, and, since it further appears that the premiums were paid out of the community estate on those policies, it is insisted that their cash surrender values should, in equity, be decreed to belong to the community estate.

The evidence further shows that the Fain-McGaha Oil Corporation was organized early in the year 1927, before the marriage of plaintiff and defendant; that Ernest R. Fain, L. D. Fain, and Chas. McGaha, who at that time composed the partnership firm of Fain Bros. & McGaha, transferred to it a number of oil interests belonging to the firm, for which the corporation issued 100,000 shares of no par value capital stock, of which 38,888.89 shares were issued to the defendant, Ernest R. Fain. Those three shareholders were its sole directors and stockholders, and there has been no change of ownership of stock or in its directory since its organization.

In appellant's briefs much of the evidence is cited in an attempt to establish an equity in the community estate in the cash surrender value of the seven life insurance policies and also in the shares of capital stock in the Fain-McGaha Oil Corporation, the legal title to which stands in the name of the defendant.

Counsel for defendant calls attention to the fact that there was no pleading on the part of appellant charging him with any course of dealings in connection with the corporation designed for the purpose of defrauding the plaintiff; in the absence of which the defendant contends he had the lawful right to handle the dividends from the shares of stock, which were his own separate property, in the manner he had done.

We believe it clear that the life insurance policies that were made payable to the defendant's estate were his separate property, in which the community estate could have no interest, either legal or equitable. Martin v. McAllister, 94 Tex. 567, 63 S.W. 624, 56 L.R.A. 585; Jones v. Jones (Tex. Civ.App.) 146 S.W. 265.

In Whiteselle v. Northwestern Mutual Life Ins. Co. (Tex.Com.App.) 221 S.W. 575, 576, it was specifically held that "the use of community funds in payment of premiums for insurance upon the life of one spouse in favor of the other does not, in the absence of fraud, create in the community the right to reimbursement for the funds so used." And further: "Recovery upon the remaining ground, namely, that the cash surrender value of the policy at the date of the divorce was community property, a one-half interest in which was decreed in the wife, is precluded under the decision in Hatch v. Hatch [35 Tex.Civ. App. 373, 80 S.W. 411], in which a writ of error was denied."

Those cases and the present suit are clearly distinguishable from the decision of this court in the case of Shoemaker v. Harrington, 30 S.W.(2d) 539, and of the Commission of Appeals in the same case, docketed as Shoemaker v. American National Ins. Co., 48 S.W.(2d) 612, in which the cash surrender value of an insurance policy was held to be the property of the wife, but it appears in that suit that the husband had assigned the same to her in a property settlement contract of the parties entered into in contemplation of the divorce suit, and, since the assignment was not in contravention of public policy, there was no legal obstacle to his right to assign his interest therein.

It is a settled rule that the legal title to stock in a corporation is not affected

by the acquisition of additional assets by the corporation, and that, in the absence of fraud, the directors of a corporation may, in their discretion, invest its earnings in such assets instead of distributing them to the shareholders. Also that enhanced value of the assets inure to the shareholders. Bryan v. Sturgis National Bank, 40 Tex.Civ.App. 307, 90 S.W. 704 (writ of error denied); Wabash Ry. Co. v. Barclay, 280 U.S. 197, 50 S.Ct. 106, 74 L.Ed. 368, 67 A.L.R. 762; Petty v. Hagan, 205 Ky. 264, 265 S.W. 787; 10 Tex. Jur. § 63, p. 669; Stringfellow v. Sorrells, 82 Tex. 277, 18 S.W. 689; article 4613, Rev.Civ.Statutes (as amended by Acts 1929, c. 32, § 1 [Vernon's Ann.Civ.St. art. 4613]).

In the record filed here there are several financial statements made up from the books of the Fain-McGaha Oil Corporation from the date of its incorporation to the date of trial, showing its assets and liabilities from time to time, dividends declared on the capital stock, amount of disbursements, etc. Also the testimony of plaintiff's witness, O. C. Dickson, keeper of the books of the corporation from the beginning of its existence to time of trial. His testimony covers many pages of the record, and was given in answer to many questions propounded by both parties. According to his testimony, the capital stock issued to defendant, E. R. Fain, and the other incorporators was paid for by transfers of property of the respective shareholders and the property transferred by defendant was acquired before his marriage. Additional property was acquired by the corporation at different times and paid for out of dividends. The dividends declared from the organization of the corporation to date of the trial aggregated $560,000. O. C. Dickson, secretary of the corporation, testified that no actual cash was paid to the stockholders for those dividends, but the same were applied to the debts owing to the partnership firm of Fain-McGaha Oil Corporation for properties purchased from the firm, some before defendant's marriage and some thereafter; and that in properties so transferred after the marriage defendant, as one of the firm, had an interest which he acquired during the marriage relation. He testified further that advancements were made by the corporation to the shareholders from time to time according to their needs, and that defendant had been paid an annual salary for services rendered as president of from $7,500 to $10,000, and the dividends were declared after those advances were paid out.

Appellant insists that the evidence shows a "fattening" of the assets of the corporation by additions thereto of properties so purchased from the partnership firm of Fain Bros. & McGaha after the marriage, which included that acquired by defendant during the marriage, and therefore the enhanced value of defendant's stock in the corporation resulting from the contribution of the property so acquired by defendant was a community asset, which should be taken into account in the division of the community estate between the parties. The several financial statements of the affairs of the corporation made up by O. C. Dickson, and introduced in evidence in connection with his testimony on the trial, showed all the transactions between the corporation and the partnership firm of Fain Bros. & McGaha, including amounts paid out of the dividends for properties purchased by the corporation from that firm; also including the accounts of the corporation with the separate estate of Ernest R. Fain and the community estate of himself and plaintiff; and he testified that, "as between the community estate and the separate estate, the community estate is indebted to the separate estate in the sum of $136,810.23" at the date of the trial.

Appellant cites many items of evidence to show the inaccuracy of the testimony just quoted of the witness Dickson, while appellee cites other facts to show that summation of facts to be correct. Such testimony of Dickson shows that in making that audit he correctly listed all property acquired by the defendant before his marriage as belonging to his separate estate, and that acquired during the marriage, and dividends on his stock, as community assets, and listed debts incurred by defendant before and during his marriage, on the same legal basis. And plaintiff made no objection to the conclusion reached by the witness as to the indebtedness of the community estate to the separate estate. Hence the trial court could properly accept that version as correct and refuse to award the plaintiff an interest, either legal or equitable, in the shares of stock in controversy which were owned by the defendant at the time of his marriage.

It is apparent that the court made a diligent effort from the voluminous evidence introduced to properly and fairly adjust all property rights as between the parties to the suit, and we are unable to say that there was error in the conclusions reached. Unless such error is shown, the division so made by the trial court cannot be disturbed.

Nor can we say that the court erred in finding that the community property was incapable of partition in kind and ordering the sale of same by the commissioner appointed for that purpose and a division made of the amount realized therefrom. It is apparent from the character of the property so listed that a partition in kind of practically all of it would be impossible.

Accordingly, all assignments of error presented by appellant and the cross-assignment presented by appellee are overruled and the judgment appealed from is affirmed.

### On Motion for Rehearing.

Plaintiff in error cites Lee v. Lee, 112 Tex. 392, 247 S.W. 828, 830, additional to the authorities cited in her original briefs filed here, and stresses the same as supporting the contention that the cash surrender values of the policies in controversy here were community property of Fain and wife and one-half thereof should have been awarded to Mrs. Fain in the divorce decree.

As shown in the opinion of the Commission of Appeals in the Lee Case, the policy in question was issued by the Texas Company to Joseph H. Lee, one of its employees, and the question at issue was whether or not his surviving wife was entitled to the benefits of the insurance at the date of his death, which occurred while he was still such employee.

The policy provided that the insured should have the right to designate the beneficiary to receive death benefits by filing with the company such a designation, with this further provision: "If an employee files no such designation, death benefits will be payable according to the laws of Texas then in force applicable to the estates of deceased persons." Joseph H. Lee filed no such designation.

After quoting articles 4621, 4622, and 4623 of our Revised Statutes regulating descent and distribution of estates of decedents, the court said:

"It is hardly necessary to notice the contention that the amount due by the Texas Company at the death of Joseph H. Lee was not 'property,' or had not been 'acquired' during the marriage with Mary Lee. The agreed statement of facts specifically shows that under the plan adopted by the company there 'accrued as a death benefit * * * the sum of $1,260.' As we construe this language, and the plan that was followed by the company, this sum of money had already been accumulated, and was due under the contract with Joseph H. Lee, but that its payment was merely held in abeyance until the happening of certain contingencies. The word 'acquired' is not to be construed in any restricted sense, but must necessarily have that broad signification as will include all effects or gains or property of every kind coming to the husband or wife during coverture in any manner other than by 'gift, devise or descent.' * * *

"We therefore answer the question propounded by the Court of Civil Appeals by saying that Mary Lee was entitled in her own right to one-half of the sum of money held by the Texas Company, and judgment should be rendered in her favor for the amount."

Since the policies in controversy here had not matured at the time of the divorce and were still under control of Ernest R. Fain, with power to change the beneficiaries, we believe the Lee Case is not in point here, and that the conclusion reached by us on original hearing is not in conflict with that decision or any other decision cited.

The motion for rehearing is overruled, as is also the motion to certify.